THIS OPINION IS A
PRECEDENT OF THE TTAB

Hearing: June 30, 2022                                   Mailed: April 12, 2023

UNITED STATES PATENT AND TRADEMARK OFFICE

————

Trademark Trial and Appeal Board

————

*Major League Baseball Players Association*
*and*
*Aaron Judge*

*v.*

*Michael P. Chisena*

————

Opposition Nos. 91240180 (parent)
91242556
91243244

————

Lori J. Shyavitz and Alexander T. Hornat of McCarter & English,
     for Major League Baseball Players Association and Aaron Judge.

Charles R. Hoffmann of Charles R. Hoffmann P.C.,
     for Michael P. Chisena.

————

Before Cataldo, Heasley, and Larkin,
     Administrative Trademark Judges.

Opinion by Heasley, Administrative Trademark Judge:

Applicant, Michael P. Chisena, seeks registration on the Principal Register of the standard character marks ALL RISE[1] and HERE COMES THE JUDGE,[2] as well as

the design mark  ,[3] all for "clothing, namely, t-shirts, shirts, shorts, pants, sweatshirts, sweatpants, jackets, jerseys, athletic uniforms, and caps" in International Class 25.

Opposer Major League Baseball Players Association (the "MLBPA") filed Notices of Opposition challenging registration of Applicant's three marks.[4] Aaron Judge, one of its members, jointly opposes registration of Applicant's design mark. Opposers' claims are for likelihood of confusion under Section 2(d) of the Trademark Act, 15

---

[1] Application Serial No. 87528414 was filed on July 14, 2017 under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b), based on Applicant's allegation of a bona fide intention to use the mark in commerce.

[2] Application Serial No. 87528440 was filed on July 14, 2017 under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b), based on Applicant's allegation of a bona fide intention to use the mark in commerce.

[3] Application Serial No. 87643089 was filed on October 12, 2017 under Section 1(b) of the Trademark Act, 15 U.S.C. § 1051(b), based on Applicant's allegation of a bona fide intention to use the mark in commerce. The application describes the mark as follows: "Color is not claimed as a feature of the mark. The mark consists of the depiction of a gavel and the scales of justice with each end supporting a baseball, both the gavel and the scales of justice being superimposed over the outline of a baseball field."

[4] 1 TTABVUE in Opposition No. 91240180 to Applicant's HERE COMES THE JUDGE mark, Opposition No. 91242556 to Applicant's ALL RISE mark, and Opposition No. 91243244 to Applicant's design mark. Citations to the briefs and other materials in the record refer to the Board's TTABVUE online docket system. *See, e.g., New Era Cap Co., Inc. v. Pro Era, LLC,* 2020 USPQ2d 10596, at *2 n.1 (TTAB 2020). Before the TTABVUE designation is the docket entry number; and after this designation is the page number, if applicable.

U.S.C. § 1052(d), false suggestion of connection under Section 2(a), 15 U.S.C. § 1052(a), use of a particular living individual's name without his consent under Section 2(c), 15 U.S.C. § 1052(c), and likelihood of dilution by blurring under Section 43(c), 15 U.S.C. § 1125(c). Applicant's Answers denied the salient allegations in each Notice of Opposition.[5] By Order of the Board, the three opposition proceedings were consolidated, with Opposition No. 91240180 designated as the parent case. Unless otherwise stated, all references to the parties' briefs and evidence are to that opposition proceeding.[6]

The parties fully briefed the issues and appeared by counsel for oral argument.

## I. The Record

The record includes the pleadings and, by operation of Trademark Rule 2.122(b), 37 C.F.R. § 2.122(b), the files for the involved applications.

In addition, Opposers introduced the following evidence:

- Testimony declaration of Evan Kaplan, Managing Director of MLB Players, Inc, a subsidiary of Opposer MLBPA, with exhibits (68 TTABVUE, 69 TTABVUE);
- Testimony declaration of Page Odle, President of PSI Sports Management, Inc., which represents Opposer Aaron Judge, with exhibits (70 TTABVUE, 71 TTABVUE);
- Testimony declaration and rebuttal testimony declaration of Aaron Judge, with exhibits (72 TTABVUE, 93-94 TTABVUE);
- Testimony declarations of licensees, with exhibits (48-67 TTABVUE);
- Rebuttal testimony declaration of Aaron Judge's mother, Patricia Judge, with exhibits 91-92 TTABVUE);
- First Notice of Reliance, containing inter alia excerpts of the discovery depositions of Applicant Michael Chisena, his uncle, Thomas DeLucia, and t-shirt printer, Douglas O'Connor, on behalf of L.I. Printhouse, Inc., with exhibits (33-36 TTABVUE);

---

[5] 4 TTABVUE in each opposition proceeding.

[6] 10 TTABVUE.

- Second Notice of Reliance, containing inter alia media coverage of Aaron Judge in print, online and broadcast formats, with exhibits (37-47, 76 TTABVUE); and
- Testimony declaration of Duncan Hall, Records Request Processor for Internet Archive, with exhibits (73 TTABVUE).

Applicant submitted the following:

- Testimony declaration of Applicant, Michael P. Chisena, with exhibits (80-83 TTABVUE);[7] and
- Amended Notice of Reliance containing copies of third-party trademark registrations or applications (90 TTABVUE).[8]

---

[7] Opposers object to Mr. Chisena's references to his educational background and his other intellectual property ventures in his declaration as irrelevant to the claims at issue. 95 TTABVUE. Applicant responds that the evidence supports his explanation of the timeline and events leading up to filing his applications. 102 TTABVUE 3. He further objects, in turn, that Opposers' deposition of his printer, Mr. O'Connor, exceeded the proper scope of the Board order permitting this third-party discovery. 102 TTABVUE 3-4. Opposers rejoin that the examination of Mr. O'Connor was permissible and Applicant failed to object. 106 TTABVUE 7-10. We remind the parties that "the Board is capable of assessing the proper evidentiary weight to be accorded the testimony and evidence, taking into account the concerns raised by the objections. We have considered all of the testimony and evidence submitted for the record. In doing so, we bear in mind both parties' objections and accord whatever probative value the evidence merits." *U.S. Olympic Committee v. Tempting Brands Netherlands B.V.*, 2021 USPQ2d 164, at *5 (TTAB 2021). Opposers' objections are overruled.

[8] The parties designated large portions of the record as confidential. The designating party bears the burden of proving that its confidentiality designations are appropriate. *U. S. Polo Ass'n v. David McLane Enters., Inc.*, 2019 USPQ2d 108442, at *2-3 (TTAB 2019). We will discuss only in general terms the relevant evidence submitted under seal, if necessary and appropriate. However, the Board will not be bound by the parties' designations, and will treat as confidential only testimony and evidence that is truly confidential, so that it can discuss the pertinent evidence of record. *Made in Nature, LLC v. Pharmavite LLC*, 2022 USPQ2d 557, at *12 (TTAB 2022). *See* Trademark Rule 2.116(g), 37 C.F.R. § 2.116(g) ("The Board may treat as not confidential that material which cannot reasonably be considered confidential, notwithstanding a designation as such by a party.").

In addition, in the confidential submissions, parties are strongly encouraged to enclose confidential information in brackets to better mark the specific information to be kept confidential. This facilitates a better comparison between the public and confidential versions of the submissions when the Board is preparing a final decision, and will reduce the likelihood that the Board inadvertently may include confidential matter in a final decision or an order on a motion. TRADEMARK TRIAL AND APPEAL BOARD MANUAL OF PROCEDURE (TBMP) § 703.01(p) (2022).

The parties stipulated that the discovery deposition testimony of third-party witnesses Thomas DeLucia and Douglas O'Connor and exhibits thereto may be offered into evidence by any party as if taken during the offering party's testimony period, subject to the other party's objections (32 TTABVUE).

Opposers list their evidentiary submissions on pages 10-11 of their main trial brief, 97 TTABVUE 12-13, and Applicant lists his submissions on pages 9-10 of his trial brief, 104 TTABVUE 10-11. We have reviewed and considered the full record before us, and will identify relevant and probative evidence as appropriate in our discussion of the merits.

## II. Background

### A. Opposers Aaron Judge and the MLBPA

Aaron Judge is an outfielder for the New York Yankees of Major League Baseball.[9] Drafted by the Yankees in 2013, he honed his game with its minor league teams until the Yankees called him up in August 2016. In his first and second Major League games, he hit home runs in his first at-bats.[10]

In the 2017 season, the Yankees named Mr. Judge the Opening Day starting right fielder—a position he holds to this day.[11] He was named American League Rookie of the month in April, May, and June 2017, and American League Player of the month in June and September, 2017.[12] By the beginning of the midsummer All-Star break,

---

[9] Judge decl. ¶ 1, 72 TTABVUE 4.

[10] Judge decl. ¶¶ 7, 9, 72 TTABVUE 5-6; Odle decl. ¶ 7, 70 TTABVUE 5.

[11] Judge decl. ¶ 10, 72 TTABVUE 6.

[12] Judge decl. ¶ 13, 72 TTABVUE 7.

he led Major League baseball in home runs and on-base percentage, among other statistics, and was invited to participate in the All-Star Home Run Derby, which was broadcast to a national audience on July 10, 2017, and which he won.[13] The next night, he played in the All-Star Game, also broadcast to a national audience, as the American League team's starting right fielder, having received more votes than any other American League player.[14]

Since Mr. Judge was called up to the Major Leagues, the media, the fans, and the Yankees have played on his surname, "Judge."[15] For his first Major League home run on August 13, 2016, the Yankees radio play-by-play announcer said "here's Aaron Judge! Here comes the Judge!"[16] In May 2017, barely two months into his rookie season, he was on the cover of *Sports Illustrated*, the article entitled "All Rise! The Yankees Youth Movement is in Session. The Powerful AARON JUDGE Presiding."

---

[13] Judge decl. ¶ 11, 72 TTABVUE 6; Odle decl. ¶ 7, 70 TTABVUE 5, 71 TTABVUE 5 (confidential).

[14] Judge decl. ¶ 12, 72 TTABVUE 7; Odle decl. ¶10, 70 TTABVUE 7, 71 TTABVUE 7 (confidential).

[15] Judge decl. ¶ 16, 72 TTABVUE 9.

[16] Judge decl. ¶ 16, 72 TTABVUE 9.



Other publications preferred "HERE COMES THE JUDGE":



---

[17] Judge decl. ¶ 15, 72 TTABVUE 8-9; Odle decl. ¶ 13, 70 TTABVUE 8, 71 TTABVUE 8 (confidential); Opposers' second NOR, ex. 93, 40 TTABVUE 253.

[18] Opposers' second NOR, ex. 124, 44 TTABVUE 195.

In May 2017, Yankee Stadium opened THE JUDGE'S CHAMBERS—three rows behind Mr. Judge in right field in which 18 fans are given black judge's robe t-shirts with his number 99 on the back and a foam gavel with ALL RISE on it, which they can take home:



Fans wear robes and raise foam gavels in The Judge's Chamber. (Elsa/Getty Images) [19]

At the 2017 Home Run Derby, a number of fans wore judges' robes and/or wigs and brought signs that read "ALL RISE", which they raised whenever he was at bat.[20]

Since August 13, 2016, when he was called up to the Majors, Mr. Judge has been a member of the MLBPA, the players' union for Major League baseball players.[21] With his approval, the MLBPA has licensed numerous third-party licensees to use word marks, with and without design marks referring to Mr. Judge on apparel, such

---

[19] Judge decl. ¶ 21, 72 TTABVUE 10-11; Opposers' second NOR ex. 102, 44 TTABVUE 17.

[20] Judge decl. ¶ 11, 72 TTABVUE 6-7; Odle decl. ¶ 7, 70 TTABVUE 5-6, 71 TTABVUE 5-6 (confidential).

[21] Judge decl. ¶ 3, 72 TTABVUE 4; Kaplan decl. ¶¶ 4, 12, 68 TTABVUE 5, 8, 69 TTABVUE 6, 9 (confidential).

as t-shirts and baseball caps, for which the licensees pay royalties.[22] Mr. Judge had the best-selling jersey in Major League baseball in 2017, his rookie year; in fact, it achieved top-seller status before the July 11, 2017 All-Star Game.[23] In 2017, Aaron Judge was the only member of a Major League baseball team with a surname that had a judicial or legal connotation.[24] Consequently, the licensed apparel products referring to Mr. Judge typically include phrases associated with the legal and judicial system, such as ALL RISE and HERE COMES THE JUDGE, and judicial indicia, such as a gavel, courthouse image, or the scales of justice.[25]

### B.    Applicant, Michael P. Chisena

On July 14, 2017, several days after the Home Run Derby and the All Star Game, Applicant, Michael P. Chisena, filed two applications for the standard character marks ALL RISE and HERE COMES THE JUDGE.[26] On October 12, 2017, he filed his application to register the design mark:[27]



---

[22] Kaplan decl. ¶¶ 5-7, 11-13, 16, 20-33, 68 TTABVUE 5-6, 9-13, 69 TTABVUE 6-8, 10-14 (confidential); Judge decl. ¶ 3, 72 TTABVUE 4.

[23] Kaplan decl. ¶ 14, 68 TTABVUE 8-9, 69 TTABVUE 9-10 (confidential).

[24] Kaplan decl. ¶¶ 8, 38, 68 TTABVUE 6-7, 14, 69 TTABVUE 7-8, 15 (confidential).

[25] Kaplan decl. ¶¶ 19, 37, 68 TTABVUE 10, 14, 69 TTABVUE 11, 15 (confidential); Odle decl. ¶¶ 15-16, 19, 70 TTABVUE 9-10, 71 TTABVUE 9-10 (confidential).

[26] Chisena declaration ¶ 55, 80 TTABVUE, 81 TTABVUE 15 (confidential).

[27] Chisena decl. ¶ 56, 80 TTABVUE, 81 TTABVUE 15 (confidential).

Again, all three applications are based on intent-to-use, and all three identify "clothing, namely, t-shirts, shirts, shorts, pants, sweatshirts, sweatpants, jackets, jerseys, athletic uniforms, and caps."

Applicant, who lives in Nassau County, Long Island, avers that "At the time I filed my trademark applications, I was not aware of any usage of the marks 'All Rise' and 'Here Comes the Judge' on apparel items, or any usage at all of such marks by Aaron Judge or the New York Yankees."[28] In fact, he states, he conceived of and created the three marks between 2012 and 2015, but during that time "had no knowledge of Aaron Judge. I became aware of Aaron Judge at some point in 2017, but do not recall the exact circumstances."[29] He explains that, while he played Little League baseball from approximately ages 6 to 15, "[d]uring my adult years, I have not been a fan of major league baseball, or professional sports in general. With regard to the Yankees and Aaron Judge, I have never been to Yankee Stadium, or ever observed Aaron Judge playing baseball. I have not watched the World Series or any All Star game in over a decade."[30]

Rather, he explains, his creation of the marks stemmed from his interest in developing a new sports product.[31] After college, he took university courses in sports management pertaining to economics, facility design, law, marketing, public and media relations and stadium/arena management.[32] He then served as a graduate

---

[28] Chisena decl. ¶ 64, 80 TTABVUE, 81 TTABVUE 17 (confidential).

[29] Chisena decl. ¶ 62, 80 TTABVUE, 81 TTABVUE 17 (confidential).

[30] Chisena decl. ¶¶ 7, 63, 80 TTABVUE, 81 TTABVUE 5, 17 (confidential).

[31] Chisena decl. ¶ 6, 80 TTABVUE, 81 TTABVUE 5 (confidential).

[32] Chisena decl. ¶ 5, 80 TTABVUE, 81 TTABVUE 5 (confidential).

assistant in a university athletic department with responsibilities to administer daily operations for NCAA Division II athletic sporting events, and earned a Master's degree in Sports Management.[33] Armed with this background, he designed and developed an improved batting tee, for which he obtained two patents.[34] Interested in cross-marketing the batting practice tee with a baseball-themed line of clothing,[35] he states, he started creating potential product samples in a digital format showing "All Rise" and "Here Comes the Judge" in later 2015.[36] With the help of his uncle Thomas DeLucia's drawing skills, he states that he developed the logo of the scales of justice and a gavel superimposed on a baseball field by the end of 2016.[37] The connection with baseball, he later explained, is that "baseball is governed by rules and umpires similar to a courtroom proceeding is governed by laws and judges."[38]

On July 10, 2017—the same day as the All-Star Game Home Run Derby—Applicant contacted his trademark counsel about conducting a search for the two standard character marks;[39] four days later, Applicant filed his applications for the two marks. Again, he disclaims any awareness concerning that year's Home Run Derby or All-Star game, and Mr. Judge's participation therein.[40] He was asked:

> Q. So are these events, Mr. Judge's accomplishments and your searching and filing of these marks, is it a coincidence that they all

---

[33] Chisena decl. ¶ 12, 80 TTABVUE, 81 TTABVUE 6 (confidential).

[34] Chisena decl. ¶¶ 17, 20, 38, 80 TTABVUE, 81 TTABVUE 7-8, 12 (confidential).

[35] Chisena decl. ¶¶ 38, 45, 80 TTABVUE, 81 TTABVUE 12 (confidential).

[36] Chisena decl. ¶ 37, 80 TTABVUE, 81 TTABVUE 11 (confidential).

[37] Chisena decl. ¶¶ 37, 48-52, 80 TTABVUE, 81 TTABVUE 11, 13-14 (confidential).

[38] Chisena dep. 73:2-5, 34 TTABVUE 55.

[39] Chisena dep. 77:2-17, 34 TTABVUE 59.

[40] Chisena dep. 53:25-54:18, 223:3-6, 34 TTABVUE 41-42, 174.

happened at the same time?
A.       Yes.[41]

About a year later, in June 2018, to test-market the marks on apparel, Applicant had T-shirts bearing the three marks printed by Douglas O'Connor, the sole proprietor of L.I. Printhouse, Inc., a T-shirt printshop on Long Island.[42] When Applicant asked him to print the marks on T-shirts, Mr. O'Connor expressed concern about copyright or trademark infringement. As he later testified:

> Q. So who was the person that come to your mind when Mr. Chisena asked you to present these T-shirts?
> A. Aaron Judge.[43]

According to Mr. O'Connor, Applicant assured him that he had the intellectual property rights in the marks, "the copyright, the trademark, the patent, whatever it was."[44] O'Connor was asked:

> Q. You took him for his word; correct?
> A. I did.
> Q. That he had the right to print those slogans and the logo on the T-shirts?
> A. Correct.[45]

Once the marks were printed on the T-shirts, Applicant avers that he sold a number of the T-shirts at a June 9, 2018 street fair in Farmingdale, Long Island, and that "[d]uring my interaction with the customers inquiring about the T-shirts being offered for sale or purchasing these T-shirts, I did not hear any interested person or

---

[41] Chisena dep. 223:13-17, 34 TTABVUE 174.

[42] Chisena decl. ¶ 58, 80 TTABVUE, 81 TTABVUE 16 (confidential).

[43] O'Connor dep., 35:1-4, 36 TTABVUE 160.

[44] O'Connor dep., 36:23-37:3, 36 TTABVUE 161-62.

[45] O'Connor dep., 37:8-14, 36 TTABVUE 162.

actual customer mention or discuss Aaron Judge, the New York Yankees or any other entity associated with Major League Baseball."[46]

## III.    Entitlement to a Statutory Cause of Action

Under Trademark Act Section 13, 15 U.S.C. § 1063, "[a]ny person who believes that he would be damaged ... by the registration of a mark upon the principal register" may file an opposition. Entitlement to a statutory cause of action, formerly called "standing," must be established in every Board opposition proceeding. *See Corcamore, LLC v. SFM, LLC*, 978 F.3d 1298, 2020 USPQ2d 11277, at *5 (Fed. Cir. 2020), *cert. denied*, 141 S. Ct. 2671 (2021); *Austl. Therapeutic Supplies Pty. Ltd. v. Naked TM, LLC*, 965 F.3d 1370, 2020 USPQ2d 10837, at *3 (Fed. Cir. 2020) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118 , 109 USPQ2d 2061, 2067 n.4 (2014)), *cert. denied*, 142 S. Ct. 82 (2021).

A party in the position of plaintiff may oppose registration of a mark where the opposition is within the zone of interests protected by statute and the party has a reasonable belief in damage proximately caused by registration of the mark. *See Meenaxi Enter., Inc. v. Coca-Cola Co.*, 38 F.4th 1067, 2022 USPQ2d 602, at*3-4 (Fed. Cir. 2022); *Corcamore*, 2020 USPQ2d 11277, at *6-7, *cited in NPG Records, LLC v. JHO Intell. Prop. Holdings LLC*, 2022 USPQ2d 770, at *12 (TTAB 2022).

Applicant points out that entitlement must be established by proof, not pleadings alone.[47] But Opposers have adduced such proof. The evidence indicates that Opposer

---

[46] Chisena decl. ¶ 59, 80 TTABVUE, 81 TTABVUE 16 (confidential). *See also* Chisena dep. 145:7-148:3, 34 TTABVUE 125-128.

[47] Applicant's brief, 104 TTABVUE 24, 103 TTABVUE 24 (confidential).

Aaron Judge authorized his union, Opposer MLBPA, to license rights to use his name and likeness, as well as other words and designs referring to him, on apparel and other fan goods.[48] Opposer MLBPA, in turn, licensed numerous third-party licensees to use these words, designs and other indicia referring to Mr. Judge on apparel, such as t-shirts and baseball caps, for which the licensees pay royalties.[49] These products typically include phrases associated with the legal and judicial system, such as ALL RISE and HERE COMES THE JUDGE, and judicial symbols, such as a gavel, courthouse image, or the scales of justice.[50] The MLBPA is authorized to enforce Mr. Judge's rights therein.[51]

Applicant argues that Opposer Aaron Judge fails to prove that he owns common law trademark rights, as he granted Opposer MLBPA the exclusive right to license and sublicense uses of his name, likeness and other personal indicia.[52] Applicant argues further that Opposer MLBPA lacks "standing" to assert Mr. Judge's claims of false suggestion of a connection and use of his name under Trademark Act Sections 2(a) and 2(c), respectively.[53]

---

[48] Kaplan decl. ¶¶ 5, 12, 68 TTABVUE 5, 8, 69 TTABVUE 6, 9 (confidential); Judge decl. ¶ 3, 72 TTABVUE 4.

[49] Kaplan decl. ¶¶ 5-7, 11, 13, 20-33, 68 TTABVUE 5-8, 10-13, 69 TTABVUE 6-9, 11-14 (confidential).

[50] Kaplan decl. ¶¶ 19, 37, 68 TTABVUE 10, 14, 69 TTABVUE 11, 15 (confidential); Odle decl. ¶¶ 15-16, 19, 70 TTABVUE 9-10, 71 TTABVUE 9-10 (confidential).

[51] Kaplan decl. ¶¶ 6, 12, 68 TTABVUE 5-6, 8, 69 TTABVUE 6-7, 9 (confidential); Judge decl. ¶ 3, 72 TTABVUE 4-5.

[52] Applicant's brief, 104 TTABVUE 26-27, 103 TTABVUE 26-27 (confidential).

[53] Applicant's brief, 104 TTABVUE 23-27, 103 TTABVUE 23-27 (confidential).

We find, however, that the record evidence establishes both Opposers' statutory entitlement to oppose the subject applications. *See Chi. Bears Football Club Inc. v. 12TH Man/Tenn. LLC*, 83 USPQ2d 1073, 1075 (TTAB 2007) (both trademark owner and licensing agent have standing).

Opposer Aaron Judge has a real interest in protecting against unauthorized use of confusingly similar marks on apparel goods. The licensees' use of his claimed marks stems from his authorization and inures to his benefit. "It is well-settled that use of a mark by a licensee inures to the benefit of the trademark owner." *Moreno v. Pro Boxing Supplies, Inc.*, 124 USPQ2d 1028, 1035 (TTAB 2017); *see also Monster Energy Co. v. Lo*, 2023 USPQ2d 87, at *12 (TTAB 2023). Moreover, Mr. Judge retained the right to enter into endorsement contracts with other entities, such as Adidas, Under Armour, and Rawlings[54]—the value of which could be undermined by unauthorized use and registration of confusingly similar marks on athletic wear.[55]

---

[54] Odle decl. ¶¶ 8-9, 12, 70 TTABVUE 6, 8, 71 TTABVUE 6, 8 (confidential); Judge decl. ¶ 24, 72 TTABVUE 11-12.

[55] Applicant raises a further challenge to Opposer Aaron Judge's standing/entitlement. In 2018, Mr. Judge founded the All Rise Foundation, a charitable organization that conducts a variety of activities for young people, such as a baseball camp and leadership conference. He testifies that his mother, Patricia Judge, acting with his express consent as Executive Director of the Foundation, filed intent-to-use applications with the PTO to register HERE COMES THE JUDGE and ALL RISE in standard characters on the Principal Register for shirts and t-shirts in Class 25. (Aaron Judge rebuttal declaration ¶¶ 2-8, 93 TTABVUE 4-5; Patricia Judge rebuttal declaration ¶¶ 1-9, 91 TTABVUE 4-5.) The intent-to-use applications, Serial Nos. 87801702 and 88423648, were filed in 2018 and 2019, respectively, and action on both applications has been suspended based on Applicant Chisena's earlier-filed pending applications for the same word marks (among others). (Applicant's amended NOR, exs. 1 and 2, 90 TTABVUE 5-12.)

Applicant contends that Patricia Judge's applications are inconsistent with her son's claim of common law rights in the marks: "In order to file a trademark application, one must assert ownership of the mark. *See Norris v. Pave Promoting Awareness, Victim Empowerment,* [2019 USPQ2d 370880,] *5 [(TTAB 2019)] . . . . The ITU applications are filed by Patricia Judge in her individual and non-representative capacity. … It cannot be substantively argued with any merit that, as result of the consent given, Aaron Judge could lawfully continue to

Opposer MLBPA may assert a real interest based on Mr. Judge's rights because he has joined it as a member, and has authorized it to act as his licensing agent, and to enforce his rights.[56] *See Mystery Ranch, Ltd. v. Terminal Moraine Inc.*, 2022 USPQ2d 1151, at *14, *17 (TTAB 2022) ("We also have held that corporate or institutional plaintiffs may assert a real interest even where such interest in the outcome of a proceeding is based on the asserted rights of its members."); *Chi. Bears v. 12TH Man*, 83 USPQ2d at 1075 (licensing agent has standing).

Both Opposers have thus established a plausible claim of interest in marks that are the same as or similar to Applicant's marks, on the same or similar sorts of apparel. *See Made in Nature v. Pharmavite*, 2022 USPQ2d 557, at *16-17. That establishes their direct commercial interest, in competition with Applicant. *Herbko*

---

maintain his common law rights to both marks while, simultaneously, Patricia Judge would proceed to obtain registered trademarks for the very same two marks for use in the same IC 025 class." Applicant's brief, 104 TTABVUE 37-38, 103 TTABVUE 37-38 (confidential).

Applicant makes too much of too little. First, an ITU applicant does **not** claim ownership of a mark; she claims bona fide intent to use it. *Norris v. PAVE*, 2019 USPQ2d 370880, at *4 ("There is no statutory requirement that the filer of an intent-to-use application be the owner of the mark at the time of filing of the intent-to-use application.").

Second, a consent is not an assignment and relinquishment of rights. 3 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 18:79 (5th ed. 2022) ("MCCARTHY") ("A consent agreement . . . is not an assignment because neither party is assigning any rights of ownership in their mark to the other."). *Cf. Mystery Ranch, Ltd. v. Terminal Moraine Inc.*, 2022 USPQ2d 1151, at *34 ("It is one thing to permit another to use one's name as a mark, quite another to relinquish all ownership rights in one's name and agree to allow another to register one's name.") (internal citation and punctuation omitted). The consent may have to be "clothed" with additional restrictions to prevent confusion between the Foundation's branded goods and the MLBPA's, *see In re Dare Foods Inc.*, 2022 USPQ2d 291, at *17-20 (TTAB 2022), but that eventuality, to be resolved between the Judges, affords Applicant Chisena no defense.

Third, Applicant's prior ITU applications, if registered, would block registration of Mrs. Judge's applications, furnishing Opposer Aaron Judge all the more reason to believe that damage would proximately result from registration of Applicant Chisena's marks.

[56] Kaplan decl. ¶¶ 6, 12, 68 TTABVUE 5-6, 8, 69 TTABVUE 6-7, 9 (confidential); Judge decl. ¶ 3, 72 TTABVUE 4-5.

*Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 64 USPQ2d 1375, 1377 (Fed. Cir. 2002) ("[I]n most settings, a direct commercial interest satisfies the 'real interest' test."); *Books on Tape, Inc. v. Booktape Corp.*, 836 F.2d 519, 5 USPQ2d 1301, 1302 (Fed. Cir. 1987) (competitor has standing).

Because registration to Applicant would provide him a prima facie right to exclusive use of his marks on his identified apparel, in competition with the apparel marketed by Opposers' licensees, both Opposers have a reasonable belief in damage that would proximately result from the registrations' issuance.[57] *Lipton Indus. Inc. v. Ralston Purina Co.*, 670 F.2d 1024, 213 USPQ 185, 189 (CCPA 1982) (reasonable belief in damage may be established by "assert[ing] a likelihood of confusion which is not wholly without merit ....").

Thus, both Opposers are entitled to a statutory cause of action under Section 2(d), and this entitlement extends to all of their statutory grounds for opposition. *Mystery Ranch v. Terminal Moraine*, 2022 USPQ2d 1151, at *17. "Accordingly, Opposer [MLBPA]'s showing establishes its entitlement to a statutory cause of action under both Trademark Act Sections 2(a) and (c), 15 U.S.C. §§ 1052(a) and (c)." *Id.* at *17-18 (citing *inter alia Jewelers Vigilance Comm., Inc. v. Ullenberg Corp.*, 823 F.2d 490, 2 USPQ2d 2021, 2024 (Fed. Cir. 1987) (association has standing to represent members' interests under Section 2(a)) and *M/S R.M. Dhariwal Huf 100% EOU v. Zarda King Ltd.*, 2019 USPQ2d 149090, at *4 (TTAB 2019) ("Standing to assert a § 2(c) claim may be established by facts that Opposer is a competitor of Applicant that has a present or prospective right to use the name ....")).

---

[57] Kaplan decl. ¶ 42, 68 TTABVUE 16, 69 TTABVUE 17 (confidential).

We conclude that Opposers have a legitimate interest in the outcome of this opposition proceeding, and are entitled to proceed under their statutory causes of action.

## IV.  Trademark Act Section 2(d) Claim

Opposers proceed under Section 2(d) of the Trademark Act, which provides that a mark may be refused registration if it "[c]onsists of or comprises a mark which so resembles a mark registered in the Patent and Trademark Office, or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive…." 15 U.S.C. §§ 1052(d), 1063.

In order to prevail on their claims under Section 2(d), Opposers must prove both priority of use of their pleaded marks and a likelihood of confusion between those marks and those Applicant has applied to register. *Otto Roth & Co. v. Universal Foods Corp.*, 640 F.2d 1317, 209 USPQ 40, 44-45 (CCPA 1981), *cited in Empresa Cubana Del Tabaco v. General Cigar Co.*, 2022 USPQ2d 1242, at *4 n.7 (TTAB 2022), *civil action filed*, No. 1:23-cv-00227 (E.D. Va. Feb. 20, 2023).

### A. Priority

As noted, Opposers must establish priority over Applicant in order to prevail on their Section 2(d) claims. *Azeka Bldg. Corp. v. Azeka*, 122 USPQ2d 1477, 1483 (TTAB 2017). For purposes of priority, "proprietary rights may arise from a prior registration, prior trademark or service mark use, prior use as a trade name, prior use analogous to trademark or service mark use, or any other use sufficient to establish proprietary rights." *Herbko v. Kappa Books*, 64 USPQ2d at 1378.

Opposers rely on their claimed common law rights for priority purposes. To establish prior common law rights, they must prove by a preponderance of the evidence that their marks are distinctive, inherently or otherwise, and that they acquired rights in the marks prior to any date on which Applicant can rely. *ARSA Distributing, Inc. v. Salud Natural Mexicana S.A. de C.V.*, 2022 USPQ2d 887, at *14-15 (TTAB 2022); *DeVivo v. Ortiz*, 2020 USPQ2d 10153, at *3 (TTAB 2020); *Kemi Organics v. Gupta*, 126 USPQ2d 1601, 1605-06 (TTAB 2018).[58]

Applicant did not use the marks in commerce until after he filed the three involved applications,[59] so the earliest dates on which he can rely are his constructive use filing dates: July 14, 2017 for the standard character marks ALL RISE and HERE COMES THE JUDGE, and October 12, 2017 for the design mark. *Zirco Corp. v. Am. Tel. and Tel. Co.*, 21 USPQ2d 1542, 1544 (TTAB 1991) ("[T]here can be no doubt but that the right to rely upon the constructive use date comes into existence with the filing of the intent-to-use application and that an intent-to-use applicant can rely upon this date in an opposition brought by a third party asserting common law rights.").

In assessing whether Opposers have established priority, we consider the evidence as a whole. *W. Fla. Seafood, Inc. v. Jet Rests., Inc.*, 31 F.3d 1122, 31 USPQ2d 1660, 1663 (Fed. Cir. 1994) ("[O]ne should look at the evidence as a whole, as if each piece of evidence were part of a puzzle which, when fitted together, establishes prior use."),

---

[58] Applicant points out that the concept of use analogous to trademark use was not pleaded, tried, or briefed. Applicant's brief, 104 TTABVUE 36, 103 TTABVUE 36 (confidential). Opposers agree that "analogous use" is inapplicable to this case. Opposers' reply brief, 107 TTABVUE 16 n.9, 108 TTABVUE 16 n.9 (confidential). *See generally JNF LLC v. Harwood Int'l Inc.*, 2022 USPQ2d 862, at *30 (TTAB 2022).

[59] Chisena dep. 79:6-18, 34 TTABVUE 61.

*quoted in Shenzhen IVPS Tech. Co. v. Fancy Pants Prods., LLC*, 2022 USPQ2d 1035, at *18 (TTAB 2022).

Oral testimony—or in this case, testimony by written declarations—normally suffices to establish priority of use, especially when strengthened by corroborative documentary evidence. *Exec. Coach Builders, Inc. v. SPV Coach Co.*, 123 USPQ2d 1175, 1184 (TTAB 2017). "While it is certainly preferable for a party's testimony to be supported by corroborating documents, the lack of documentary evidence is not fatal." *Productos Lacteos Tocumbo S.A. de C.V. v. Paleteria La Michoacana Inc.*, 98 USPQ2d 1921, 1931 (TTAB 2011) ("[O]ral testimony should be clear, consistent, convincing, and uncontradicted." *Powermatics, Inc. v. Globe Roofing Products Co.*, 341 F.2d 127, 144 USPQ 430, 432 (CCPA 1965)), *aff'd,* 188 F. Supp. 3d 22 (D.D.C. 2016), *aff'd*, 743 F. App'x 457, 128 USPQ2d 1172 (D.C. Cir. 2018).

### 1. Opposers' Evidence

In this case, Opposers submit the written declaration testimony of Evan Kaplan, the former Director of Licensing and Business of Opposer MLBPA, and current Managing Director of its subsidiary MLB Players, Inc., which represents the MLBPA in connection with the use and licensing of intellectual property rights it owns or controls.[60] Mr. Kaplan testifies, with supporting exhibits, that MLBPA, the union that represents players on the rosters of the Major League baseball teams (¶4), conducts a group licensing program managed by its subsidiary, MLB Players, Inc., of players' names, nicknames, likenesses and other personal indicia (¶5); it enters into licensing agreements for products featuring the players' personal indicia, such as

---

[60] Kaplan dec. ¶ 1, 68 TTABVUE 4, 69 TTABVUE 5 (confidential).

apparel, headwear, memorabilia, bobbleheads, bags, and other collectibles (¶6); and it requires licensees to obtain its approval for each product they sell (¶8), after which they produce, distribute, market, and sell the approved product (¶10) and regularly report sales, for the purpose of calculating royalties (¶11).

Mr. Kaplan also testifies that Mr. Judge has been a MLBPA member since 2016 (¶12); numerous licensees have obtained approval to produce and market products bearing his personal indicia, the most pertinent of which are described below; the declarations of ten such licensees are of record, with exhibits, such as their license agreements, approvals, and depictions of apparel and other goods bearing Mr. Judge's personal indicia (¶¶11, 13).[61] At all relevant times, Mr. Judge was the only member of a Major League baseball team with the surname "Judge," so the licensees' "[p]roducts featuring Mr. Judge typically include judicial indicia such as judicial symbols like a judge's gavel, an image of a courthouse or the scales of justice, and/or phrases associated with the judicial and legal system, including ALL RISE, HERE COMES THE JUDGE, and ORDER IN THE COURT, among others, as plays on his surname Judge." (¶ 19.)

For example, in August 2016, the MLBPA approved licensee Bored in Class, d/b/a 500 Level's use of the following JUDGEMENT DAY with a gavel design on apparel,

---

[61] Licensees that have submitted declarations are: Bored In Class, LLC, 48 TTABVUE, 49 TTABVUE (confidential); 108 Stitches, LLC, 50 TTABVUE, 51 TTABVUE (confidential); Boelter Brands, LLC, 52 TTABVUE, 53 TTABVUE (confidential); BreakingT LLC (54 TTABVUE (confidential), 55 TTABVUE; Coed Sportswear, Inc., 56 TTABVUE, 57 (confidential); Fan Print, Inc., 58 TTABVUE, 59 TTABVUE (confidential); Team Beans, LLC d/b/a Forever Collectibles, 60 TTABVUE, 61 TTABVUE (confidential); New Era Cap Co., 62, 64 TTABVUE, 63, 65 TTABVUE (confidential); The Emblem Source, LLC, 66 TTABVUE, 67 (confidential).

including t-shirts, shirts and sweatshirts:



The licensee began offering to sell and/or selling this apparel at least as early as December 2016.[62]

In June 2017 another licensee, Fanatics, obtained the MLBPA's approval and began selling ALL RISE T-shirts depicting Mr. Judge swinging a gavel:

---

[62] Bored in Class decl. ¶¶ 9-13, 48 TTABVUE 6-7, 49 TTABVUE 6-7 (confidential).



63

That same month, licensee Bored In Class began selling its own ALL RISE with gavel design T-shirt:



64

At least as early as June 5, 2017, licensee Fan Print began offering to sell or selling another ALL RISE T-shirt:

---

[63] Kaplan decl. ¶¶ 22-24, 68 TTABVUE 11, 69 TTABVUE 12 (confidential).

[64] Bored In Class decl. ¶¶ 11-12, 48 TTABVUE 10, 49 TTABVUE 6-7 (confidential).



65

That same month, it also began offering to sell and/or selling apparel, including

T-shirts, shirts, and sweatshirts, with the following ALL RISE and gavel design:



66

Licensee New Era began selling NY logo and ALL RISE baseball caps as shown

below at least as early as June 2017:

[65] Fan Print decl. ¶¶ 11-12, 58 TTABVUE 6-7, 59 TTABVUE 6-7 (confidential).

[66] *Id*. at ¶¶ 17-18, 58 TTABVUE 9, 59 TTABVUE 9 (confidential).



67

In June 2017, with MLBPA approval, licensee Outerstuff began offering to sell or selling HERE COMES THE JUDGE apparel with a gavel design on a baseball diamond background:



68

---

[67] New Era decl. ¶¶ 11-13, 64 TTABVUE 7, 65 TTABVUE 7 (confidential). *See also* New Era decl. ¶¶ 14-18 (ALL RISE caps), 64 TTABVUE 7-9, 65 TTABVUE 7-9 (confidential); The Emblem Source decl. ¶ 11-12 (ALL RISE with gavel patch), 66 TTABVUE 6-7, 67 TTABVUE 6-7 (confidential).

[68] Overstuff decl. ¶¶ 26-28, 74 TTABVUE 12-13, 75 TTABVUE 12-13 (confidential).

Additionally, on July 13, 2017, the MLBPA approved licensee Coed's HERE COMES THE JUDGE on a baseball diamond design T-shirt, shown below, which Coed began offering to sell and/or selling that month:



In June 2017, licensee The Emblem Source began selling clothing patches bearing the following judicial and baseball phrases and symbols and Mr. Judge's surname:



---

[69] Coed decl. ¶¶ 15-17, 56 TTABVUE 8-9, 57 TTABVUE 8-9 (confidential). The Coed declaration does not specify that it began using the mark before July 14, 2017, so it is relevant only to show use of the diamond design prior to Applicant's Oct. 12, 2017 filing date for his design mark, and continued bona fide use of HERE COMES THE JUDGE in the ordinary course of trade. 15 U.S.C. § 1127.

[70] The Emblem Source decl. ¶¶11-12, 66 TTABVUE 7, 67 TTABVUE 7 (confidential).

Licensee New Era began selling caps emblazoned Mr. Judge's name, player number, team logo and judicial gavels at least as early as June 2017:



[71]

Licensee 108 Stitches sold T-shirts displaying the scales of justice over a baseball design at least as early as May 2017:

 

[72]

In June 2017, licensee Outerstuff began offering to sell and/or selling apparel bearing THE JUDGE'S CHAMBERS with a baseball diamond design background:

---

[71] New Era decl. ¶¶ 22-23, 64 TTABVUE 11, 65 TTABVUE 11 (confidential).

[72] 108 Stitches decl. ¶¶ 10-13, 50 TTABVUE 6-8, 75, 51 TTABVUE 6-8, 75 (confidential).



[73]

These are some of the numerous apparel designs that licensees have produced featuring Aaron Judge.[74] The licensees attest that Mr. Judge is the only athlete they know of who has been marketed in connection with judicial phrases and symbols, as a play on his surname.[75]

### 2. Applicant's Arguments (and responses thereto)

In his brief, Applicant advances multiple legal arguments designed to demonstrate that Opposers have not pleaded or proven that they established proprietary rights in their claimed trademarks prior to his constructive use dates.

---

[73] Outerstuff decl. ¶¶ 20-22, 74 TTABVUE 9-10, 75 TTABVUE 9-10 (confidential).

[74] "In 2016 and 2017 alone, 500 Level developed, manufactured, marketed and sold at least 27 different apparel designs featuring Aaron Judge." Bored In Class decl. ¶ 9, 48 TTABVUE 6, 49 TTABVUE 6 (confidential); "In 2017 alone, Fan Print developed, manufactured, marketed and sold apparel featuring at least 21 different designs featuring Aaron Judge." Fan Print decl. ¶ 9, 58 TTABVUE 6, 59 TTABVUE 6 (confidential).

[75] Bored In Class decl. ¶ 37, 48 TTABVUE 6, 49 TTABVUE 6 (confidential); 108 Stitches decl. ¶ 19, 50 TTABVUE 9, 51 TTABVUE 9 (confidential); Boelter Brands decl. ¶ 16, 52 TTABVUE 8, 53 TTABVUE 8 (confidential); Breaking T decl. ¶ 22, 54 TTABVUE 10 (confidential), 55 TTABVUE 10; Coed decl. ¶ 20, 56 TTABVUE 9, 57 TTABVUE 9 (confidential); Fan Print decl. ¶ 23, 58 TTABVUE 10, 59 TTABVUE 10 (confidential); New Era decl. ¶ 23, 62 TTABVUE 10, 63 TTABVUE 10 (confidential).

### a. The Notices of Opposition

In his brief, Applicant challenges for the first time whether Opposers have adequately pleaded the common law marks on which their oppositions rely.[76] Applicant argues that the Electronic System for Trademark Trials and Appeals (ESTTA) cover sheet is deemed part of a party's notice of opposition, and that the ESTTA cover sheet accompanying the notice of opposition in the parent case—Opposition No. 91240180 opposing Application Serial No. 87528440 for HERE COMES THE JUDGE—merely lists "JUDGE" as Opposer's word mark. "Thus, 'JUDGE,' as stated in the ESTTA, is the sole wordmark proffered by Opposer as the basis for the opposition filed against HERE COMES THE JUDGE…," Applicant argues, concluding that "Opposers['] attempts to now rely upon alleged usage of HERE COMES THE JUDGE, as well as other expressions, should be precluded."[77]

Furthermore, according to Applicant, the other two notices of opposition plead ALL RISE and judicial symbols, including gavels, alone and with other terms and designs, but "none of the three notices refers to Opposers' specific date of adoption and/or use other than to claim use prior to Applicant's intent-to-use filing date, and none claim use of the symbol 'TM'."[78]

Applicant's argument is unavailing. "Since ESTTA's inception, the Board has viewed the ESTTA filing form and any attachments thereto as comprising a single

---

[76] Applicant could and should have raised this argument earlier, either in a motion for more definite statement or a motion to dismiss. TBMP §§ 503, 505. Nonetheless, for the sake of completeness, we address it now.

[77] Applicant's brief, 104 TTABVUE 31.

[78] Applicant's brief, 104 TTABVUE 30-33.

document or paper being filed with the Board." *PPG Indus. Inc. v. Guardian Indus. Corp.*, 73 USPQ2d 1926, 1928 (TTAB 2005). The ESTTA-generated filing form is thus considered part of the plaintiff's initial pleading—not its entirety. *Flame & Wax, Inc. v. Laguna Candles, LLC*, 2022 USPQ2d 714, at \*3 n.4 (TTAB 2022). "The Board views the ESTTA filing form and the attached pleading as comprising a single document or paper being filed with the Board." TBMP § 309.02.

Furthermore, "Fed. R. Civ. P. 8(a)(2), made applicable to Board proceedings by Trademark Rule 2.116(a), 37 C.F.R. § 2.116(a), requires that a pleading contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ahal Al-Sara Group for Trading v. Am. Flash, Inc.*, 2023 USPQ2d 79, at \*3 (TTAB 2023). *See also* Trademark Rule 2.104(a), 37 C.F.R. § 2.104(a) ("The opposition must set forth a short and plain statement showing why the opposer believes he, she or it would be damaged by the registration of the opposed mark and state the grounds for opposition."). "The federal standard of notice pleading, followed by the Board, includes the requirement that the complaint 'state a claim to relief that is plausible on its face.' *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) ('the *Iqbal/Twombly* standard')." *Lewis Silkin LLP v. Firebrand LLC*, 129 USPQ2d 1015, 1016 (TTAB 2018). "The elements of each claim should be stated concisely and directly, and include enough detail to give the defendant fair notice." *Fair Indigo LLC v. Style Conscience*, 85 USPQ2d 1536, 1538 (TTAB 2007) (citing Fed. R. Civ. P. 8(e)(1) and *Harsco Corp. v. Elec. Scis. Inc.*, 9 USPQ2d 1570, 1571 (TTAB 1988) (since function of pleadings is to give fair notice of claim, a party is allowed reasonable latitude in its statement of its claims)).

Opposers' pleadings afforded Applicant fair notice of their claimed trademarks, and of the basis of their priority claims. As Opposers correctly observe, the notice of opposition to HERE COMES THE JUDGE claimed ownership of the "Judge Marks," defined as "JUDGE, alone and with other terms."[79] In the notice of opposition to ALL RISE, "Judge Marks" was defined as "ALL RISE, alone and with other terms."[80] And in the notice of opposition to Applicant's design mark, "Judge Marks" was defined as "judicial terminology, including, but not limited to, Judge's surname, JUDGE, HERE COMES THE JUDGE and ALL RISE, and judicial symbols, including gavels, alone and with other terms and designs."[81] In each case, Opposers pled that the respective Judge Marks had been "continuously used prior to the filing date of the Application and have not been abandoned."[82] Opposers did not need to plead use of the 'TM' symbol to claim common law rights in their marks.

As Opposers further note, Applicant did not file a motion for more definite statement, and has known of Opposers' claim to these marks for years during the course of this proceeding, from initial disclosures through discovery and trial.[83] Opposers seek leave to amend their notice of opposition to conform to the evidence, if

---

[79] 1 TTABVUE ¶ 7, 1 TTABVUE 4.

[80] Opp. No. 91242556 ¶ 5, 1 TTABVUE 4.

[81] Opp. No. 91243244 ¶ 6, 1 TTABVUE 4-5.

[82] Opp. No. 91240180 ¶ 11, 1 TTABVUE 5; Opp. No. 91242556 ¶ 10; Opp. No. 91243244 ¶ 10, 1 TTABVUE 5.

[83] Opposers' response, 106 TTABVUE 3-7. *See* Shyavitz decl. ex. A (initial disclosures of goods sold under HERE COMES THE JUDGE); Shyavitz decl. exs. B, C and D (MLBPA answers to Applicant's interrogatory nos. 3 and 16 regarding use of HERE COMES THE JUDGE); Shyavitz decl. exs. E and F (MLBPA response to Applicant's request for production no. 25 of documents of its use of HERE COMES THE JUDGE). 106 TTABVUE 12-13, 16, 32-33, 42-43, 49, 59.

necessary, but that will not be necessary. "In inter partes proceedings before the Board, as in civil cases before the United States district courts, all pleadings are so construed as to do justice." TBMP § 309.03 (echoing Fed. R. Civ. P. 8(e): "Pleadings must be construed so as to do justice."). We find that Opposers' pleadings provided fair notice of Opposers' claimed marks, and Applicant was afforded a full and fair opportunity to litigate the issues.

### b. Distinctiveness

According to Applicant, Opposers' brief fails to argue that their claimed marks, particularly ALL RISE and HERE COMES THE JUDGE, are distinctive, thereby waiving Opposers' rights on this issue.[84] The precedents on which Applicant relies, however, concern failure to **plead** required elements of claims. *See, e.g.*, *Hoover Co. v. Royal Appliance Mfg. Co.*, 238 F.3d 1357, 57 USPQ2d 1720, 1723 (Fed. Cir. 2001) ("This issue was not raised in Hoover's Notice of Opposition and the board did not rule on it. We decline to address it for the first time on appeal."); *Young v. AGB Corp.*, 152 F.3d 1377, 47 USPQ2d 1752, 1755 (Fed. Cir. 1998) ("We agree that this issue is not before us because it was not pleaded by Young in his Notice of Opposition, and therefore was not before the Board."). Here, as Applicant admits, Opposers' Notices of Opposition claim that their marks are distinctive.[85] Moreover, ALL RISE and HERE COMES THE JUDGE do not describe the apparel on which they appear, such as t-shirts, jerseys, and caps, and are thus inherently distinctive. *See Nautilus Grp., Inc. v. ICON Health & Fitness Inc.*, 372 F.3d 1330, 71 USPQ2d 1173, 1180 (Fed. Cir.

---

[84] Applicant's brief, 104 TTABVUE 48, 103 TTABVUE 48 (confidential).

[85] *Id.*

2004) (An arbitrary mark is "a known word used in an unexpected or uncommon way."). Applicant tacitly admits as much by seeking his own registrations on the Principal Register without a claim of acquired distinctiveness.

### c. Surname

Applicant argues, however, that Opposers use "JUDGE," the last term in HERE COMES THE JUDGE, "solely … to uniquely point to Aaron Judge's surname"; and if it is primarily merely a surname, it "cannot be deemed considered as inherently distinctive" under Section 2(e)(4) of the Trademark Act.[86] 15 U.S.C. § 1052(e)(4). As Opposers rightly observe, however, Applicant's surname argument is a red herring.[87]

One consideration in determining if a term is primarily merely a surname is whether that term has any recognized meaning other than as a surname. *In re Eximius Coffee, LLC*, 120 USPQ2d 1276, 1278 (TTAB 2017). "[W]e consider the impact the … term has or would have on the purchasing public because 'it is that impact or impression which should be evaluated in determining whether or not the primary significance of a word when applied to a product is a surname significance. If it is, **and it is only that**, then it is primarily merely a surname.'" *In re Olin Corp.*, 124 USPQ2d 1327, 1330 (TTAB 2017) (quoting *In re Harris-Intertype Corp.*, 518 F.2d 629, 186 USPQ 238, 239 (CCPA 1975) and *Ex parte Rivera Watch Corp.*, 106 USPQ 145, 149 (Comm'r Pat. 1955)).

Here, the relevant purchasing public clearly perceives "JUDGE" in the context of

---

[86] *Id.* at 45-46.

[87] Opposers' reply brief, 107 TTABVUE 14 n.5, 108 TTABVUE 14 n.5 (confidential).

HERE COMES THE JUDGE as a play on words, embracing both its judicial and surname meanings. "If there is a readily recognized meaning of a term, apart from its surname significance, such that the primary significance of the term is not that of a surname, registration should be granted on the Principal Register without evidence of acquired distinctiveness." TRADEMARK MANUAL OF EXAMINING PROCEDURE (TMEP) § 1211.01(a)(i) (2022) (citing inter alia *Fisher Radio Corp. v. Bird Elec. Corp.*, 162 USPQ 265, 267 (TTAB 1969) (holding BIRD not primarily merely a surname due to ordinary language meaning of "bird," despite being the surname of applicant's president); *In re Hunt Elecs. Co.*, 155 USPQ 606 (TTAB 1967) (holding commonly used dictionary word HUNT not primarily merely a surname despite surname significance)).[88]

In the context of the entire phrase HERE COMES THE JUDGE, the term "JUDGE" is not **primarily merely** a surname within the meaning of Section 2(e)(4). *In re J. J. Yeley*, 85 USPQ2d 1150, 1151 (TTAB 2007) ("'Merely' is synonymous with 'only,' and 'primarily' refers to 'first in order' or 'fundamentally.'"). On this record, "JUDGE" is not primarily merely a surname, and the phrase "HERE COMES THE JUDGE" remains inherently distinctive for the goods of interest.

---

[88] There are some circumstances in which the existence of other non-surname meanings may not preclude a finding that a mark is primarily merely a surname. *Mitchell Miller, P.C. v. Miller,* 105 USPQ2d 1615, 1621 (TTAB 2013) (holding that in the context of legal services, consumers would only see Miller as merely a surname and not as the non-surname meaning of "miller"). In this case, however, as the evidence shows, the dual meanings of JUDGE are readily apparent to the relevant consumers. *In re tapio GmbH*, 2020 USPQ2d 11387, at *8 (TTAB 2020) (citing *Earnhardt v. Kerry Earnhardt, Inc.*, 864 F.3d 1374, 123 USPQ2d 1411, 1413 (Fed. Cir. 2017)).

### d. Nickname

Applicant next turns his attention to the other word mark, ALL RISE.

In a separate claim under Section 2(c) of the Trademark Act. 15 U.S.C. § 1052(c), Opposers characterize ALL RISE as Aaron Judge's "nickname," the better to bolster the claim that Applicant is attempting to register a name identifying a particular living individual without his written consent.[89]

Under Section 2(d), Applicant seizes upon this "nickname" characterization, arguing that if "ALL RISE" is Mr. Judge's nickname, then it does not serve as a trademark. Applicant likens this case to *In re Mancino*, 219 USPQ 1047 (TTAB 1983), in which the applicant, a professional boxer fighting under the name "Ray (BOOM BOOM) Mancini," failed to establish that his professional boxing nickname would be viewed as a service mark for various entertainment services.

The *Mancino* case is distinguishable from the present case. There, the applicant only submitted specimens consisting of an official program sold at one of his boxing matches, a leaflet from an unspecified publication referring to his nickname "BOOM BOOM" and his "ring record," and newspaper articles and captions referring to him by the nickname. Based on these specimens, the Board found that those encountering the words "BOOM BOOM" would regard the words solely as his boxing nickname, and not as a service mark for entertainment services, namely, conducting boxing exhibitions and matches. *Mancino*, 219 USPQ at 1047-48.

Here, however, as the evidence shows, baseball fans and commentators began using "ALL RISE" as a play on Aaron Judge's last name early in his career. It does

---

[89] Opposers brief, 95 TTABVUE 50, 96 TTABVUE 50 (confidential).

not matter whether it's technically a nickname or not. A plaintiff may have a protectable property right in any term the public has come to associate with the plaintiff's goods or services. *See Big Blue Prods., Inc. v. Int'l Bus. Machs. Corp.*, 19 USPQ2d 1072 (TTAB 1991) (BIG BLUE for IBM) *cited in Fiat Grp. Automobiles S.p.A. v. ISM, Inc.*, 94 USPQ2d 1111, 1115 (TTAB 2010) and *N.Y. Yankees P'ship v. IET Prods. & Servs., Inc.*, 114 USPQ2d 1497, 1504-05 (TTAB 2015).[90] Moreover, Opposers' licensees began selling t-shirts and baseball caps bearing ALL RISE as early as June 2017. In 2017, MLBPA received more product approval requests for Mr. Judge, then a rookie, than it did for any other Major League baseball player, and Aaron Judge-related products were top sellers.[91] So unlike *Mancino*, there is a plethora of evidence demonstrating authorized licensees' use of ALL RISE on apparel, such as t-shirts and baseball caps, associated with Mr. Judge.[92]

### e. Use as Trademarks

Still, Applicant argues, Opposers have not proven use of their claimed common law marks as source indicators—i.e., as trademarks. Opposer MLBPA "has never considered the terms ALL RISE and HERE COMES THE JUDGE, or images of

---

[90] As these decisions demonstrate, the public's use of a term may bestow trademark rights on a plaintiff even if, like BIG BLUE, it is not shortened from a longer name. Applicant's argument that a nickname must always be shortened from a longer name is erroneous. *See* Applicant's brief, 104 TTABVUE 47, 103 TTABVUE 47 (confidential).

[91] Kaplan decl. ¶ 15, 68 TTABVUE 9, 69 TTABVUE 10 (confidential).

[92] In view of our finding that ALL RISE is a play on Mr. Judge's last name, we find it unnecessary to reach the issue of whether ALL RISE is indeed a "nickname" within the reach of Section 2(c).

judicial indicia, to constitute trademarks," Applicant argues.[93] According to

Applicant:

> the standard MLBPA License Agreement distinguishes the term "Trademarks" from the term "Rights". These two terms are separately defined in Schedule A. The term "Trademark" refers to the specific MLBPA and Major League trademarks listed in Schedule A. In contrast, the term "Rights" is defined to mean "the names, nicknames, likenesses, signatures, pictures, numbers, playing records, biographical data and/or other personal indicia of the Players."

> In other words, up until the filing of these oppositions, MLBPA did not consider such things as names, nicknames and indicia to constitute trademarks, as evidenced by the definitions contained in its standard License Agreement.[94]

The MLBPA "clearly did not believe such names, nicknames and indicia were functioning as trademarks," Applicant continues, or it would have "required its licensees to use either the TM or ® symbols in connection with such names and indicia" and would have filed trademark applications to register them as trademarks.[95] In short, "no claim is made that the parties' intent was to adopt any specific designations as trademarks."[96]

A party's intention does not determine whether a designation it affixes to goods functions as a trademark. *Roux Labs, Inc. v. Clairol Inc.*, 427 F.2d 823, 66 USPQ2d 34, 39 (CCPA 1970) ("The mere fact that a combination of words or a slogan is adopted and used by a manufacturer with the intent [that it function as a mark] does not necessarily mean that the slogan accomplishes that purpose in reality."), *quoted in In*

---

[93] Applicant's brief, 104 TTABVUE 27, 103 TTABVUE 27 (confidential).

[94] Applicant's brief, 104 TTABVUE 28, 103 TTABVUE 28 (confidential).

[95] Applicant's brief, 104 TTABVUE 28-29, 103 TTABVUE 28-29 (confidential).

[96] Applicant's brief, 104 TTABVUE 36, 103 TTABVUE 36 (confidential).

*re Texas With Love, LLC*, 2020 USPQ2d 11290, at *3 (TTAB 2020).

The MLBPA's description of its members' names, images, likenesses and other personal indicia as "rights," as opposed to its own "trademarks," is not controlling. As Opposers' notices of opposition demonstrate, those "rights" may be subject to protection under a variety of legal theories, sounding not only in trademark under Section 2(d), but also false association under Section 2(a) (based on the rights of privacy and publicity), and use of a personal name under Section 2(c) of the Trademark Act. The characterization of these "rights" in the MLBPA Standard License Agreement does not control their legal status. Nor does the presence or absence of the TM or ® symbols. *In re Sones*, 590 F.3d 1282, 93 USPQ2d 1118, 1124 (Fed. Cir. 2009); *In re Tracfone Wireless, Inc.*, 2019 USPQ2d 222983, at *2 (TTAB 2019) ("Although this use is accompanied by the federal trademark registration symbol, this is not dispositive for our analysis…."). "Registration of a mark is not mandatory. The owner of an unregistered mark may still use it in commerce and enforce it against infringers." *Iancu v. Brunetti*, 588 U. S. __, 139 S. Ct. 782, 2019 USPQ2d 232043, at *2 (2019).

The critical inquiry in determining whether a designation functions as a mark is how it would be perceived by the relevant public. *U. S. Pat. & Trademark Off. v. Booking.com B.V.*, 591 U.S. __, 140 S. Ct. 2298, 2020 USPQ2d 10729, at *6-7 (2020) ("consumer perception" is "a bedrock principle of the Lanham Act"), *cited in Monster Energy Co. v. Lo*, 2023 USPQ2d 87, at *45; *In re Vox Populi Registry Ltd.*, 25 F.4th 1348, 2022 USPQ2d 115, at *2 (Fed. Cir. 2022); *In re Mayweather Promotions, LLC*, 2020 USPQ2d 11298, at *1-2 (TTAB 2020).

The U.S. Court of Appeals for the Federal Circuit has found "helpful" the Board's practice of looking to evidence "showing how the designation is actually used in the marketplace" to determine "how the designation would be perceived by the relevant public." *Vox Populi*, 2022 USPQ2d 115, at *2-3. In this case, the standard MLBPA license agreement designates the marketplaces in which its licensees may sell goods bearing its players' designations—including *inter alia* stadium shops and sports specialty stores.[97] The relevant public in those marketplaces is ordinary sports fans, particularly baseball fans, and the key issue is how they perceive the phrases ALL RISE and HERE COMES THE JUDGE, as displayed on t-shirts, jerseys, baseball caps and other athletic apparel. *See In re Greenwood*, 2020 USPQ2d 11439, at *2 (TTAB 2020).

The evidence establishes that fans perceive these judicially-themed slogans as a direct and unmistakable reference to Opposer Aaron Judge, as a play on his judicial-sounding surname. The fans and the media initiated the judicial references early on. In May 2017, for example:

## All rise for Aaron Judge's fan group

 Follow **Liz Roscher**, Big League Stew · May 12, 2017

---

[97] *See, e.g.,* 108 Stitches license agreement, 50 TTABVUE 74, 51 TTABVUE 74 (confidential); Team Beans, LLC d/b/a Forever Collectibles license agreement, 60 TTABVUE 52, 61 TTABVUE 52 (confidential); New Era Apparel license agreement, 62 TTABVUE 46, 63 TTABVUE 46 (confidential); New Era Cap license agreement, 64 TTABVUE 49, 65 TTABVUE 49 (confidential).

In a very short time, New York Yankees right fielder Aaron Judge has become one of MLB's brightest young stars. He's tied for the lead in home runs with 13, and he's in the top 10 for slugging percentage and OPS. Plus, the homers Judge hits are absolutely enormous.

With that kind of talent on their team, a group of Yankees fans wanted to find a way to let Judge know that they support him. And there's no better way to do that than starting a fan group! With their favorite player's name being Aaron Judge, what do you think they picked as their theme? The thing that all their signs and costumes would be based on?



[98]

That same month, "The Judge's Chambers," opened in the Yankees' right field stands:

[98] Yahoo.com, 5/12/2017, Opposers' Second NOR, ex. 96, 41 TTABVUE 4-5.



Fans wear robes and raise foam gavels in The Judge's Chamber. (Elsa/Getty Images)    [99]

The MLBPA licensees followed suit, intentionally placing judicially-themed slogans and symbols on their apparel products to indicate a connection with Mr. Judge.[100] Their apparel featuring Mr. Judge "typically include[s] judicial indicia such as a judge's gavel, an image of a courthouse or the scales of justice, and/or phrases associated with the judicial and legal system, including ALL RISE, HERE COMES THE JUDGE, and ORDER IN THE COURT, among others, as plays on his surname Judge."[101] These slogans and symbols have a single point of reference. One licensee after another declared that "[t]o my knowledge, Aaron Judge is the only athlete who

---

[99] New York Daily News, May 23, 2017, Opposers' Second NOR, ex. 102, 44 TTABVUE 15-19.

[100] Outerstuff decl. ¶ 10, 74 TTABVUE 6, New Era Cap ¶ 10, 65 TTABVUE 6 (confidential), Bored In Class decl. ¶ 10, 49 TTABVUE 6 (confidential), 108 Stitches dec. ¶ 10, 51 TTABVUE 6 (confidential), Breaking T decl. ¶ 10, 54 TTABVUE 6 (confidential), Coed Sportswear ¶ 10, 57 TTABVUE 6 (confidential).

[101] Kaplan decl. ¶ 19, 68 TTABVUE 10, 69 TTABVUE 11 (confidential).

has been marketed in connection with judicial symbols and phrases, as the use of such symbols and phrases is an obvious play on his surname."[102] The licensees design and market their apparel bearing these slogans and symbols subject to Opposer MLBPA's approval, supervision and quality review.[103]

These are the hallmarks of trademark use. "To be a mark, the phrase must be used in a manner which indicates to purchasers or potential purchasers a single source or origin for the goods." *In re DePorter*, 129 USPQ2d 1298, 1299 (TTAB 2019). "A trademark informs the public of a source of the goods and assures them of its quality." *DeVivo v. Ortiz*, 2020 USPQ2d 10153, at *7 (citing *In re Polar Music Int'l AB*, 714 F.2d 1567, 221 USPQ 315, 317 (Fed. Cir. 1983) and *Coca-Cola Co. v. Koke Co. of Am.,* 254 U.S. 143, 146 (1920)). The evidence of record supports a finding that the consumers who encounter these signature slogans and symbols on t-shirts and other athletic apparel would recognize, associate, and perceive them as pointing to a single source: Aaron Judge, the one sponsoring or authorizing the merchandise. The subject slogans and symbols, as used by Opposers and their authorized licensees in the context of athletic apparel, perform that classic trademark function.

### f. Failure to Function as Trademarks

Applicant also posits that ALL RISE and HERE COMES THE JUDGE, as used

---

[102] Bored In Class decl. ¶ 37, 48 TTABVUE 6, 108 Stitches ¶ 19, 50 TTABVUE 9, Boelter Brands decl. ¶ 16, 52 TTABVUE 8, Breaking T decl. ¶ 22, 55 TTABVUE 10, Fan Print decl. ¶ 23, 58 TTABVUE 10, New Era decl. ¶ 23, 62 TTABVUE 10, Outerstuff decl. ¶ 35, 74 TTABVUE 14. *See also* Kaplan decl. ¶ 38, 68 TTABVUE 14, Odle decl. ¶ 18, 70 TTABVUE 10.

[103] Kaplan decl. ¶¶ 7-10, 69 TTABVUE 7-8 (confidential), 108 Stitches decl. ¶¶ 5-7, Ex. A, Standard License Agreement ¶ 7, "QUALITY, NOTICES, APPROVALS AND SAMPLES," 51 TTABVUE 5-6, 16-17.

by Opposers, do not function as trademarks.[104] Applicant likens this case to *Univ. of Ky. v. 40-0, LLC*, 2021 USPQ2d 253 (TTAB 2021), which found that NCAA basketball fans would buy t-shirts bearing the legend "40-0", not because it was a trademark, but because it was a common message denoting a perfect, unbeaten college basketball season.[105] According to Applicant, as with any slogans and other terms that are considered merely informational in nature, Opposers' use of the well-known phrases ALL RISE and HERE COMES THE JUDGE "does not translate to adoption by Judge or MLBPA of either or both of those common word combinations as trademark designations."[106] Instead, Applicant maintains:

> The overall stark visual informational impression and marketing messaging sought to and actually being supplied by those terms as used on the specimens is to engender acknowledgment of, enthusiasm and overall support for Aaron Judge and his skills as a baseball player. In the overall context of the specimens, those phrases in whatever varying format or messaging they have been used and, as stated in *In re Eagle Crest, supra* at *4, if:
>
>> Used in this manner, the slogan functions solely to convey an informational message on the shirt. It would not be viewed as a trademark identifying the source of the shirt.
>
> If consumers understand that a common place message, in whatever varying form it is presented, is being used to convey the ordinary concept or sentiment normally associated with that message, the designation does not serve and cannot serve any source-indicating function. *See University of Kentucky, supra,* at *16 *citing In re Mayweather, supra*, 2020 USPQ2d, at *1; *In re Greenwood*, 2020 USPQ2d 11439, at *2 (TTAB 2020); *In re Team Jesus*, 2020 USPQ2d 11489, at *5-6 (TTAB 2020); *see generally* TMEP § 1202.04(b). Based on the specimens of record, none of Opposers' messages/designations function as trademarks.[107]

---

[104] Applicant's brief, 104 TTABVUE 42, 103 TTABVUE 42 (confidential).

[105] Applicant's brief, 104 TTABVUE 43, 103 TTABVUE 43 (confidential).

[106] Applicant's brief, 104 TTABVUE 35, 103 TTABVUE 35 (confidential).

[107] Applicant's brief, 104 TTABVUE 44-45, 103 TTABVUE 44-45 (confidential).

We recognize that "the source identifier requirement is broader than just whether a proposed mark is generic or descriptive." *Vox Populi Registry*, 2022 USPQ2d 115, at *2. A term may still fail to function as a mark even if it does not convey information about the goods to which it is affixed. *In re Brunetti*, 2022 USPQ2d 764, at *43 (TTAB 2022), *appealed docketed*, No. 23-1539 (Fed. Cir. Feb. 27, 2023).

It appears Applicant is conflating two types of failure-to-function refusals. One type concerns terms that will be perceived as commonly understood and widely-used phrases, which, as a result, consumers will not see as designations that identify and distinguish a unique source. Commonplace, widely-used expressions are free for all to use, and would be "understood as merely conveying the ordinary concept or sentiment normally associated with them, rather than serving any source-indicating function." *Brunetti*, 2022 USPQ2d 764, at *12. *See, e.g.*, *In re Volvo Cars of N. Am. Inc.*, 46 USPQ2d 1455, 1461 (TTAB 1998) (DRIVE SAFELY for automobiles); *In re Greenwood,* 2020 USPQ2d 11439, at *2 (GOD BLESS THE USA). None of those expressions points to a particular source. But here, the record shows that the consuming public recognizes the subject slogans and symbols carrying judicial connotations as pointing to only one baseball player on one major league team, similar to the record in *In re Lizzo LLC,* 2023 USPQ2d 139, at *34-39 (TTAB 2023).[108]

---

[108] The consuming public would not be aware of the precise roles played by the MLBPA or its licensees on Aaron Judge's behalf, but that is immaterial. The Trademark Act defines a trademark as "any word, name, symbol, or device, or any combination thereof — (1) used by a person ... to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127.

Applicant argues Opposers' claimed marks are displayed on their licensed clothing and other merchandise in a way that consumers wear or use "to engender acknowledgment of, enthusiasm and overall support for Aaron Judge and his skills as a baseball player."[109] Applicant's argument seems to make (and simultaneously rebut) a slightly different failure-to-function argument: that Opposer's claimed marks, rather than being perceived as source indicators, will instead be perceived as mere ornamentation on those goods.

"The 'ornamentation' of a T-shirt can be of a special nature which inherently tells the purchasing public the source of the T-shirt, not the source of manufacture but the secondary source." *In re Olin Corp.*, 181 USPQ 182, 182 (1973), *quoted in In re Lululemon Athletica Can. Inc.*, 105 USPQ2d 1684, 1689 (TTAB 2013). As the TMEP puts it: an argument that a proposed mark is used in a merely ornamental fashion and thus fails to function as a source identifier may be overcome where "the applicant … submit[s] evidence that the proposed mark would be recognized as a mark through its use *with goods or services other than those being refused as ornamental*." TMEP § 1202.03(c) (emphasis added); *see also* MCCARTHY § 3:8. ("Trademarks can serve to identify and distinguish a 'secondary source' in the sense of indicating sponsorship or authorization. The 'secondary source' is the trademark owner and licensor who has permitted the use of its mark on certain goods or services.") As explained below, we think that, to the extent Applicant is arguing that Opposer's use of the marks is mere ornamentation, the argument fails.

Applicant's argument, quoted above, actually concedes that consumers wear

---

[109] Applicant's brief, 104 TTABVUE 44, 103 TTABVUE 44 (confidential).

Opposers' licensed goods to show support or approval for other services, namely, Aaron Judge's baseball entertainment services. And Opposers' evidence supports this. The secondary source principle was illustrated in *University Book Store v. University of Wisconsin Bd. of Regents*, 33 USPQ2d 1385 (TTAB 1994), which found that the University of Wisconsin could register "WISCONSIN BADGERS" and "Bucky Badger" mascot logos as its trademarks for clothing. Even though third parties, such as the opposers in that case, sold articles of clothing bearing the marks, their use "on clothing and other types of imprinted merchandise were plainly in reference to the University, as expressions of support for its athletic and academic programs by the business community." *Id*. at 1402. The University maintained adequate control over the nature and quality of the goods sold under the marks. *Id*. And even though "consumers buy a T-shirt, sweatshirt or other garment because they like and want the particular 'Bucky Badger,' 'Bucky on W' or 'WISCONSIN BADGERS' design imprinted thereon," "the undisputed fact remains that a significant portion of the purchasing public associates the marks with [the University] as a particular source for the goods." *Id*. at 1406. The Board quoted MCCARTHY:

> As to such uses, it has been held that trademarks can serve to identify and distinguish a 'secondary source' in the sense of indicating sponsorship or authorization by a recognized entity. For example, the mark of a university on clothing can signify that the university endorses and licenses the sale of such wearing apparel by the manufacturer.....

*Id*. at 1405 (quoting MCCARTHY § 24.03 [4] [a] (3d ed. 1994)).

"It is well settled that matter which serves as part of the aesthetic ornamentation of goods, such as T-shirts, sweatshirts and shirts, may nevertheless be registered as

a trademark for such goods if it also serves a source-indicating function." *In re Pro-Line Corp.*, 28 USPQ2d 1141, 1142 (TTAB 1993). *See also In re Watkins Glen Int'l, Inc.*, 227 USPQ 727 (TTAB 1985) (finding checkered flag design for clothing items and emblem patches ornamental, but also source-indicating) *cited in Univ. of Ky. v. 40-0*, 2021 USPQ2d 253, at \*33.

The TMEP explains ways "[o]rnamental matter that serves as an identifier of a 'secondary source' is registrable on the Principal Register. For example, ornamental matter on a T-shirt … can convey to the purchasing public the 'secondary source' of the T-shirt (rather than the manufacturing source). Thus, even where the T-shirt is distributed by a party other than that identified by the designation, sponsorship or authorization by the identified party is indicated." TMEP § 1202.03(c) (providing examples where the party has previously used the designation or registered it on the Principal Register).

The qualifications for serving as a secondary source indicator are not, however, limited to the TMEP's examples. A party may submit "other evidence (such as evidence of promotion of the matter as a mark, survey evidence demonstrating purchaser perception of the matter as a mark, etc.) showing that purchasers recognize that matter as an indication of the source of the goods." *In re Pro-Line*, 28 USPQ2d at 1142 (citing *In re David Crystal, Inc.*, 296 F.2d 771, 132 USPQ 1 (CCPA 1961)). Again, consumer perception controls: whether consumers view such indicia as merely ornamental or as identifying a secondary source of sponsorship is a question of fact. *Univ. Book Store v. Univ. of Wis.*, 33 USPQ2d at 1405. In fact, "[w]hen words or designs are used on T-shirts, it is a highly fact-intensive determination of whether

these symbols are solely decorative ornamentation, or in addition serve as a trademark indicating a 'secondary source'…." MCCARTHY § 7:24. *See also id*. at § 24:8.

In this case, we find the evidence of record—and Applicant's own arguments—sufficient to establish that the judicial phrases and symbols used by Opposers and their licensees serve to perform the function of identifying a secondary source for the apparel on which they appear. The Kaplan and Odle testimony, corroborated by numerous licensees' testimony, all supported by exhibits, credibly establishes that Opposers Aaron Judge and the MLBPA authorized and licensed the licensees—subject to Opposer MLBPA's supervision and quality review—to market apparel bearing judicial phrases and symbols in order to indicate a connection to Mr. Judge, the only major league player with a judicial-sounding surname. The evidence further establishes that these judicial phrases and symbols signified Mr. Judge to the relevant consuming public: sports fans and baseball fans in particular, and continue to do so. This public would certainly be familiar with the merchandising practice of a popular athlete sponsoring and authorizing fan memorabilia; and even the most naïve among them would be aware that merchandisers have to seek and gain approval, and then pay royalties, to market such merchandise. Here, as in *University of Wisconsin*, these phrases and symbols on the licensed apparel function as trademarks pointing to Aaron Judge as their secondary source.

Whether we view Applicant's failure-to-function argument as raising the "widely-used, commonly understood phrase" subtype or the "mere ornamentation" subtype, we think the argument fails either way: Opposers plainly have used their claimed common law marks as trademarks—much as Applicant claims he intends to do.

### g. Dates of First Use

Applicant finally directs his attention to the core priority issue of whether Opposers used their trademarks before his constructive use dates of July 14, 2017 for the applied-for word marks ALL RISE and HERE COMES THE JUDGE, and October



12, 2017 for the applied-for design mark,         . Applicant specifically questions two of the eleven licensee declarations, claiming that "the July 5, 2017 priority date claimed in the BreakingT LLC Declaration is not supported by the royalty report attached thereto as Exhibit C. Likewise, the July 2017 priority date claimed in the Coed Sportswear Declaration is not supported by the royalty report attached thereto as Exhibit C."[110]

Applicant did not depose these two licensees, or, for that matter, any of the other declarants. Licensee BreakingT's approval request form for its ALL RISE with gavel design t-shirt was submitted and approved by the MLBPA on July 5, 2017.[111] BreakingT avers that it began offering to sell or selling that t-shirt that same day.[112] The royalty report, though confidential, covers the period from July 1 through September 30, 2017, without specifying precise dates of sales.[113] Since Applicant did not depose this declarant or establish that its declaration is unreliable, we may thus

---

[110] Applicant's brief, 104 TTABVUE 42, 103 TTABVUE 42 (confidential).

[111] BreakingT decl. Ex. B, 54 TTABVUE 51-52 (confidential).

[112] BreakingT decl. ¶¶ 3,11, 14, 54 TTABVUE 5-8 (confidential).

[113] BreakingT decl. Ex. C, 54 TTABVUE 54-55 (confidential).

rely on the BreakingT declaration, which is otherwise uncontroverted.

The Coed royalty report, like BreakingT's, merely reports quarterly sales—that is, from July through September, without specifying precise dates.[114] But Coed's declaration, unlike BreakingT's, merely states that it received MLBPA approval of its t-shirt designs on July 13, 2017 and began offering to sell and/or selling t-shirts bearing those designs that month.[115] Coed's declaration and exhibits, taken together, do not demonstrate use of the subject word marks before July 14, 2017, or use of judicial designs before October 12, 2017, so they are not relied on for those purposes. As noted, they are relevant only to show use of the diamond design prior to Applicant's Oct. 12, 2017 filing date for his design mark, and continued bona fide use of HERE COMES THE JUDGE in the ordinary course of trade. 15 U.S.C. § 1127. The remaining licensees' declarations are uncontroverted. The applicable licensee trademark uses inure to both Opposers' benefit, and predate Applicant's constructive use dates.

### 3. Conclusion as to Priority

Considering the applicable evidence as a whole, as if each piece were part of a puzzle, *W. Fla. Seafood*, 31 USPQ2d at 1663, we find by a preponderance of the evidence that Opposers have established priority of use of ALL RISE and HERE COMES THE JUDGE, as well as judicial designs such as a gavel, courthouse image, or the scales of justice, as trademarks on t-shirts, baseball caps, and other athletic apparel.

---

[114] Coed decl. Ex. C, 57 TTABVUE 55-79 (confidential).

[115] Coed decl. ¶¶ 11-13, 15-17, 57 TTABVUE 6-9, ex B, 57 TTABVUE 52-54, ex. D, 57 TTABVUE 80-82 (confidential).

### B. **Likelihood of Confusion**

To determine whether there is a likelihood of confusion between the marks under Section 2(d), we analyze the evidence and arguments under the factors set forth in *In re E. I. du Pont de Nemours & Co.*, 476 F.2d 1357, 177 USPQ 563, 566 (CCPA 1973) (the "*DuPont* factors"), *cited in B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 135 S. Ct. 1293, 113 USPQ2d 2045, 2049 (2015). "Not all of the *DuPont* factors are necessarily relevant or of equal weight in a given case, and any one of the factors may control a particular case. … Only the *DuPont* factors of significance to the particular mark need be considered in the likelihood of confusion analysis." *Tiger Lily Ventures Ltd. v. Barclays Cap. Inc.*, 35 F.4th 1352, 2022 USPQ2d 513, at *7 (Fed. Cir. 2022) (internal citation and punctuation omitted); *see also In re Guild Mortg. Co.*, 912 F.3d 1376, 129 USPQ2d 1160, 1161-62 (Fed. Cir. 2019) (the Board considers the *DuPont* factors for which there is evidence and argument). In any likelihood of confusion analysis, two key considerations are the similarities between the marks and the similarities between the goods. *See In re i.am.symbolic, LLC*, 866 F.3d 1315, 123 USPQ2d 1744, 1747 (Fed. Cir. 2017) ("The likelihood of confusion analysis considers all *DuPont* factors for which there is record evidence but 'may focus … on dispositive factors, such as similarity of the marks and relatedness of the goods.'") (quoting *Herbko v. Kappa Books*, 64 USPQ2d at 1380).

Applicant does not address the *DuPont* factors in his brief, apparently conceding likelihood of confusion, should Opposers prevail on priority. *See In re Morinaga Nyugyo K.K.*, 120 USPQ2d 1738, 1740 (TTAB 2016). Opposers have prevailed on

priority, so we offer a brief explanation of why the parties' marks, as used on their apparel goods, are confusingly similar.

### 1. Similarity of the Goods, Channels of Trade, and Customers' Care

We begin with the second through fourth *DuPont* factors, which respectively consider the similarity or dissimilarity and nature of the goods, the similarity or dissimilarity of established, likely-to-continue trade channels, and the conditions under which and buyers to whom sales are made, i.e., impulse versus careful, sophisticated purchasing. *Sabhnani v. Mirage Brands, LLC*, 2021 USPQ2d 1241, at *19, *40 (TTAB 2021) (citing *In re Detroit Athletic Co.*, 903 F.3d 1297, 128 USPQ2d 1047, 1051-52 (Fed. Cir. 2018) and *DuPont*, 177 USPQ at 567).

Applicant's identified goods, once again, are "clothing, namely, **t-shirts, shirts**, shorts, pants, **sweatshirts**, sweatpants, jackets, **jerseys**, athletic uniforms, and **caps**." (Emphasis added to overlapping goods.) These apparel goods are identical in part to the goods sold by Opposers' various licensees—t-shirts, shirts, sweatshirts, jerseys and caps.[116] And they are otherwise closely related. Opposers' goods, consisting mainly of tops and headwear, complement Applicant's shorts, pants, and sweatpants, all of which could be purchased together in a single shopping expedition, and worn together to signify affinity with Mr. Judge. Opposers' emblems, moreover,

---

[116] *See* Kaplan decl. ¶¶ 22-33, 68 TTABVUE 11, 69 TTABVUE 12 (t-shirts) (confidential); Bored in Class decl. ¶¶ 11-13, 21, 49 TTABVUE 7, 10 (t-shirts, shirts, and sweatshirts); 108 Stitches decl. ex. D, 51 TTABVUE 118-120, (t-shirts); BreakingT, decl. ¶¶ 11-14, 54 TTABVUE 6-7 (t-shirts); Coed decl. ¶¶ 11-18, 57 TTABVUE 6-9 (t-shirts); Fan Print decl. ¶¶ 11-12, 14-18, 59 TTABVUE 6-9 (t-shirts, shirts, sweatshirts); New Era decl. ¶¶ 11-13, 63 TTABVUE 7-8, 72-73, 91-100 (t-shirts, caps, jerseys); New Era Cap decl. ¶¶ 9-25, 65 TTABVUE 6-11 (caps); Outerstuff decl. ¶¶ 4, 11-13, 17-19, 26-31, 75 TTABVUE 5-13 (t-shirts).

could be affixed to any of Applicant's apparel items.[117] The goods are therefore complementary. *See In re Melville Corp.*, 18 USPQ2d 1386, 1388 (TTAB 1991) (finding jacket, blouse, pants and shoes complementary, frequently purchased in a single shopping expedition). "It is sufficient for a finding on likelihood of confusion that relatedness is established for any item encompassed by the identification of goods in the application." *DeVivo v. Ortiz*, 2020 USPQ2d 10153, at \*11 (citing *Tuxedo Monopoly, Inc. v. General Mills Fun Group*, 648 F.2d 1335, 209 USPQ 986, 988 (CCPA 1981)). Here, **all** of the respective goods are either identical or related.

"Because the goods of both parties are at least overlapping, we must presume that the purchasers and channels of trade would at least overlap." *L. & J.G. Stickley, Inc. v. Cosser*, 81 USPQ2d 1956, 1971 (TTAB 2007). *See generally Cai v. Diamond Hong, Inc.,* 901 F.3d 1367, 127 USPQ2d 1797, 1801 (Fed. Cir. 2018). The purchasers would include ordinary sports fans, particularly baseball fans, and the channels of trade would include, inter alia, sports venues and sporting goods stores, where Opposers' clothing goods bearing their marks are sold. *See Bos. Red Sox Baseball Club LP v. Sherman*, 88 USPQ2d 1581, 1591 (TTAB 2008).

"It is also important to consider that t-shirts and many of the other casual, everyday items of wearing apparel identified in applicant's application are relatively inexpensive and are therefore likely to be purchased by consumers on impulse, and without a great deal of care. This is a factor that increases the likelihood of confusion." *Id*.

---

[117] The Emblem Source decl. ¶¶ 11-12, 67 TTABVUE 6-7 (emblem patches).

The second through fourth *DuPont* factors thus weigh in favor of finding a likelihood of confusion.

### 2. Similarity of the Marks

Under the first *DuPont* factor, we consider "[t]he similarity or dissimilarity of the marks in their entireties as to appearance, sound, connotation and commercial impression." *DuPont*, 177 USPQ at 567. "Similarity in any one of these elements may be sufficient to find the marks confusingly similar." *In re Inn at St. John's, LLC*, 126 USPQ2d 1742, 1746 (TTAB 2018) (internal quotation omitted), *aff'd mem.*, 777 F. App'x 516 (Fed. Cir. 2019), *quoted in Sabhnani v. Mirage Brands, LLC*, 2021 USPQ2d 1241, at *26.

Where, as here, the parties' goods are, in the main, identical, "the appearance of a mark of similar sound, appearance, or connotation is more likely to cause confusion than if the goods are significantly different." *Bridgestone Ams. Tire Operations, LLC v. Fed. Corp.*, 673 F.3d 1330, 1337, 102 USPQ2d 1061, 1064 (Fed. Cir. 2012). Hence, "the degree of similarity necessary to support a conclusion of likely confusion declines." *Cai v. Diamond Hong*, 127 USPQ2d at 1800.

Applicant's word marks, ALL RISE and HERE COMES THE JUDGE, capture the key judicial phrasing used so frequently as a play on Aaron Judge's name.



Applicant's design mark, , confirms the reference to baseball, framing the key judicial images against a baseball diamond background. Superimposed over the baseball field are the scales of justice, tilting toward right field, Aaron Judge's frequent defensive position. Suspended in the scales of justice are baseballs. Striking the baseball in right field is a judicial gavel—an image frequently used to replace a baseball bat in the hands of Mr. Judge.

All of Applicant's marks could be depicted in navy blue and white, the Yankees baseball team's primary colors.[118] *See* Trademark Rule 2.52(a); 37 CFR § 2.52(a) (in standard character marks, no claim is made to any particular font style, size, or color) *cited in Shenzhen v. Fancy Pants*, 2022 USPQ2d 1035, at *38; TMEP § 807.14(e)(1) ("If a mark is initially depicted in a black-and-white special form drawing in which no color is claimed, the drawing is presumed to contemplate the use of the mark in any color, without limitation."). In fact, Applicant sold samples of t-shirts bearing his marks in navy blue and white.[119] The person who printed the marks on the t-shirts was asked at his deposition:

---

[118] *See, e.g.*, New Era decl. ¶ 24, 63 TTABVUE 10 (The "products connected with Aaron Judge ordinarily feature the colors navy blue and white, because those are primary colors of the New York Yankees, Mr. Judge's team."). *See also* Coed decl. ¶ 21, 57 TTABVUE 10; New Era Cap decl. ¶ 30, 65 TTABVUE 12.

[119] Chisena decl. ¶ 58-61, 81 TTABVUE 15-17.

Q… You're comfortable that you
only printed navy and white T-shirts
for Mr. Chisena; right?
A. Yes, because I see the
invoices, yes.
Q. And you're comfortable that
you could have gotten him any other
color he wanted; correct?
A. Correct.[120]

The printer questioned whether the marks referred to Aaron Judge. [121]

The key issue, though, is how the relevant consuming public would perceive the marks. We determine the commercial impression of Applicant's marks not in the abstract, but rather in the context of the goods and channels of trade in which they would be used. Here, where there are no restrictions on Applicant's channels of trade, where his apparel could be sold in or near stadiums or in sports apparel stores, and where the consuming public is sports fans, particularly baseball fans, the commercial impression is unmistakable: it refers to Aaron Judge.

Given the widespread use of judicial phrases and symbols in connection with Mr. Judge,[122] by a large number of licensees,[123] Applicant's marks, on the same or similar sorts of apparel products, convey the impression that they emanate from one of those licensees—all affiliated with, or sponsored or approved by the same secondary source,

---

[120] O'Connor deposition, 56:18-57:1, 36 TTABVUE 181-82.

[121] O'Connor deposition, 35:1-4, 45:18-20, 36 TTABVUE 160, 170.

[122] Judge decl. ¶ 16, 72 TTABVUE 9; Odle decl. ¶ 19, 70 TTABVUE 10, 71 TTABVUE 10 (confidential).

[123] Kaplan decl. ¶ 15, 69 TTABVUE 10 (confidential).

Aaron Judge. *See In re Detroit Athletic Co.*, 128 USPQ2d at 1052 (similar marks conveyed impression that applicant's clothing store was owned, sponsored, supplied, or otherwise affiliated with registrant's clothing line). The marks are so similar in commercial impression that "persons who encounter the marks would be likely to assume a connection between the parties." *Cai v. Diamond Hong*, 127 USPQ2d at 1801.

The first *DuPont* factor thus weighs heavily in favor of a likelihood of confusion.

### 3.    Remaining Factors

Because the key *DuPont* factors—similarity of the marks and the goods—weigh so heavily in favor of finding a likelihood of confusion, *see In re i.am.symbolic*, 123 USPQ2d at 1747, the remaining applicable *DuPont* factors may be addressed collectively.

As noted, Applicant's printer questioned whether Applicant's marks referred to Aaron Judge until Applicant allayed his concerns.[124] Opposers argue that this constitutes actual confusion under the seventh *DuPont* factor.[125] A single inquiry about whether a mark indicates affiliation between parties does not generally evidence actual confusion. *Cf. Nat'l Rural Elec. Coop. Ass'n v. Suzlon Wind Energy Corp.*, 78 USPQ2d 1881, 1886-87 (TTAB 2006) (finding one instance of an e-mail asking if the defendant's mark might be an infringement was not sufficient evidence of a likelihood of confusion. "We are not persuaded that this single instance of alleged actual confusion is significant."), *aff'd*, 214 F. App'x 987 (Fed. Cir. 2007). But an

---

[124] O'Connor deposition, 35:1-4, 45:18-20, 36 TTABVUE 160, 170.

[125] 96 TTABVUE 37.

inquiry by a businessperson affiliated with a party may carry more probative value. *First Int'l Servs. Corp. v. Chuckles Inc.*, 5 USPQ2d 1628, 1634 (TTAB 1988) (where an opposer's franchisee, presumably a sophisticated businessperson familiar with the opposer's business, made such an inquiry, it was more probative) *quoted in Southwestern Mgmt., Inc. v. Ocinomled, Ltd.,* 115 USPQ2d 1007, 1030 n.148 (TTAB 2015), *aff'd*, 652 F. App'x 971 (Fed. Cir. 2016). Consonant with this case law, we find this single inquiry insufficient to show actual confusion under the seventh *DuPont* factor, but we have nonetheless taken the printer's testimony into account under the first *DuPont* factor, indicating that printing Applicant's marks in blue and white increases their similarity with Opposers' marks.

Under the ninth *DuPont* factor, Opposers argue that they have licensed their marks for use on a wide variety of goods, such as bobblehead figures, baseball cards, decals, pennants, and the like.[126] But since Opposers' marks already appear on the same sort of Class 25 apparel goods as Applicant's marks, Opposers need not rely on this factor to show the relatedness of the goods. *See Made in Nature v. Pharmavite*, 2022 USPQ2d 557, at *60 ("Given the relatedness of the parties' identified goods, we find it unnecessary to rely on this factor. We therefore find the ninth *DuPont* factor to be neutral with respect to a finding of likelihood of confusion."); *Monster Energy v. Lo*, 2023 USPQ2d 87, at *39 ("This factor may favor a finding that confusion is likely if the goods or services are not obviously related, but has less impact if the parties' goods or services in issue are identical or closely related.").

---

[126] Opposers' brief, 96 TTABVUE 38.

Under the thirteenth *DuPont* factor, Opposers argue for the first time in their reply brief that Applicant adopted his marks in bad faith.[127] In their main brief, Opposers made only a passing reference to this point, stating in their Preliminary Statement that Applicant "seeks to register three trademarks that trade on the good will created by Mr. Judge…."[128] But they did not argue that Applicant's conduct constituted bad faith intentional adoption of another's marks under the applicable thirteenth *DuPont* factor. "A party's bad faith in adopting a mark is relevant to the thirteenth *DuPont* factor, which includes 'any other established fact probative of the effect of use.'" *Quiktrip W., Inc. v. Weigel Stores, Inc.,* 984 F.3d 1031, 2021 USPQ2d 35, at *4 (Fed. Cir. 2021) (citing *DuPont*, 177 USPQ at 567).

Applicant's brief does not speak directly to the *DuPont* factors, arguing that they "need not be addressed and should be dismissed as Opposers' have failed in their burden to prove priority of each of their alleged common law marks."[129] But the brief's preliminary Statement of Facts contends that he "has always been acting in good faith."[130] This contention does little to avert a finding of likelihood of confusion, for "while evidence of bad faith adoption typically will weigh against an applicant, good faith adoption typically does not aid an applicant attempting to establish no likelihood of confusion." *Eveready Battery Co. v. Green Planet, Inc.*, 91 USPQ2d 1511, 1516 (TTAB 2009).

---

[127] Opposers' reply brief, 108 TTABVUE 20-22.

[128] 96, 97 TTABVUE 10.

[129] 103, 104 TTABVUE 49.

[130] 103, 104 TTABVUE 20-21.

Applicant's timing, and choice of marks and colors are indeed eyebrow-raising, and his protestations of good faith strain credulity. *See Tao Licensing, LLC v. Bender Consulting Ltd.,* 125 USPQ2d 1043, 1063 (TTAB 2017) ("We have discussed our consideration of some of Respondent's more eyebrow-raising activities…."). On the whole, we deem the record evidence sufficient to negate Applicant's protestations of good faith.

On the other hand, Opposers could and should have raised their argument regarding Applicant's bad faith under the thirteenth *DuPont* factor in their main brief, not in their reply brief. A reply brief "must be confined to rebutting the defendant's main brief. In other words, the reply brief shall be limited to the key points in defendant's brief which plaintiff believes require clarification or response, and should not be used as an opportunity to argue plaintiff's case in chief." TBMP § 801.03. Given the present posture of the case, Opposers' arguments and evidence undercut Applicant's claim of good faith, but will not be weighed in the balance as establishing bad faith under the thirteenth *DuPont* factor.

As noted, however, a showing of bad faith is not required to establish likelihood of confusion under Section 2(d). *J & J Snack Foods Corp. v. McDonald's Corp.*, 932 F.2d 1460, 18 USPQ2d 1889, 1891 (Fed. Cir. 1991) ("Whether there is evidence of intent to trade on the goodwill of another is a factor to be considered, but the absence of such evidence does not avoid a ruling of likelihood of confusion."); *Jewelers Vigilance Comm. Inc. v. Ullenberg Corp.*, 853 F.2d 888, 7 USPQ2d 1628, 1630 (Fed. Cir. 1988) ("Moreover, proof of intent to trade on another's goodwill, while persuasive evidence of likelihood of confusion, is not, in any event, a requirement under section 2(d).").

The thirteenth *DuPont* factor is neutral.

## V. Conclusion

We have considered all of the arguments and evidence of record and weighed all relevant *DuPont* factors. Because we have found that (i) the parties' marks are the same or similar, (ii) their goods are identical in part and otherwise related, (iii) they would move in the same or overlapping trade channels, and (iv) they are offered to the same class of purchasers, some of whom would engage in "impulse" purchasing, we conclude that Applicant's marks, as used on or in connection with the apparel goods identified in his applications, so resembles Opposers' previously-used common law marks as to be likely to cause confusion or mistake, or to deceive under Section 2(d) of the Trademark Act.

Because we resolve this proceeding on the basis of priority and likelihood of confusion under Section 2(d) of the Trademark Act, we do not reach Opposers' other grounds for opposition. *See NPG Records*, 2022 USPQ2d 770, at *25.

**Decision:**

The oppositions to registration of Applicant's three marks are sustained on the ground of priority and likelihood of confusion under Section 2(d), and registration to Applicant is refused.